In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-1491

GREGORY J. TURLEY,

*Plaintiff-Appellant*,

*v.*

DAVE REDNOUR, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:10-cv-00789-MJR—**Michael J. Reagan**, *Judge*.

ARGUED SEPTEMBER 10, 2012—DECIDED JULY 3, 2013

Before EASTERBROOK, *Chief Judge,* and CUDAHY and
KANNE, *Circuit Judges*.

CUDAHY, *Circuit Judge*. This is a case about a prison's
lockdowns and Eighth Amendment, conspiracy, and
Due Process claims arising from those repeated lockdowns.

Gregory J. Turley is serving a life sentence in Menard
Correctional Center, a state prison in downstate Illinois.
He is classified as a low-aggression offender, and housed
in a unit with other prisoners of similar aggression levels.
In the period between January 7, 2008, and October 4, 2010,

prison administration frequently placed the prison on lockdown wherein prisoners were confined to their cells without any yard time. In all, 25 lockdowns were imposed, with 81 days being the longest continuous period of lockdown, and totaling 534 lockdown days. Thus, prisoners were confined in lockdown status for more than 50% of the period in question.

Turley brought two intertwined Eighth Amendment violation claims, a conspiracy claim and a Due Process claim with regard to Menard's lockdowns. He alleged that these lockdowns were often imposed for non-penologically-related purposes, such as isolated fights between two inmates from other cellhouses, rumors of a potential fight or for no reason at all. The repeated lockdowns resulted in lack of exercise for inmates. Turley further claims that by confining two inmates together in a small cell, in the context of the frequent use of lockdowns, prison officials showed deliberate indifference to inmates' physical and psychological injuries. Specifically, Turley claims that he suffered injuries such as irritable bowel syndrome, headaches, tinnitus, sleep deprivation, colon spasms, nosebleeds, weight loss and extreme stress.

Turley alleges that the excessive use of lockdowns arose out of a conspiracy among prison officials and union employees to create a staff shortage and negotiate a pay raise. Additionally, Turley alleges there was a conspiracy to exaggerate prison response to minor incidents, or no incidents at all, in order to allow staff to take vacation and/or to psychologically punish all prisoners for the misconduct of a few. Finally, Turley

claims that his $10 per month idle pay stipend was withheld during lockdown periods without due process. His complaint was brought against various prison personnel. *See* SA at A-16 (listing names and positions).

Before bringing this claim, Turley filed several grievances with Menard Correctional Center. The record includes a letter from the Administrative Review Board, the highest authority within the prison's complaint system, denying a grievance Turley filed based on "Administrative Policy (Lockdowns)" in 2008. SA at A-24. The underlying grievance report is not included in the record.

Turley also filed a grievance in February 2009. SA at A-18. There, he challenged the frequent use of lockdown as an exaggerated response to security concerns, a way to avoid paying overtime to employees and a way to give staff vacation time (particularly around holidays). A-19-22. Turley specifically listed lockdowns that occurred from November 24, 2008 to December 9, 2008, and from December 29, 2008 to January 12, 2009. A-19. Further, Turley listed 14 other lockdowns occurring throughout 2008 that showed a pattern of lockdowns coinciding with holidays. *Id.* He also complained that a lockdown in his own low-to-medium-aggression cellhouse was frequently imposed due to incidents between inmates in other, completely separate cellhouses. A-20, A-23. His grievance was denied by the Administrative Review Board on June 10, 2009. SA at A-17.

Turley then filed an October 2009 grievance. SA at A-27 (partially illegible). In this grievance, Turley described

his confinement to a 40 square foot segregation cell with another prisoner. Turley alleges that this grievance was ignored by prison officials. Similarly, he received no response to a grievance filed in August 2010.

In October 2010, Turley filed his *pro se* federal complaint under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 1915A, the district court reviewed this claim for sufficiency.[1] The court dismissed both Eighth Amendment claims at the screening review stage and did not address the conspiracy or Due Process claims. The district court erroneously noted that Turley did not state "how long the lockdown lasted, making it impossible for the Court to determine . . . whether there had been an eighth amendment violation."

Turley, now represented by counsel, is appealing the dismissal of his complaint. The state of Illinois has filed a brief as a party in interest in the matter.

---

[1] Section 1915A provides as follows: (a) Screening.—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

    (b) Grounds for Dismissal.—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—

    (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or

    (2) seeks monetary relief from a defendant who is immune from such relief.

This court reviews § 1915A dismissals under the Federal Rule of Civil Procedure 12(b)(6) standard for stating a claim for relief. *Santiago v. Walls*, 599 F.3d 749, 755-56 (7th Cir. 2010). Dismissal orders are reviewed de novo, "taking all well-pleaded allegations of the complaint as true and viewing them in the light most favorable to the plaintiff." *Id.* at 756 (quoting *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000) (internal quotation marks omitted)).

We must examine whether Turley properly exhausted administrative remedies before filing suit, whether these federal claims are time-barred and whether Turley's complaint sufficiently states a claim to survive dismissal. We find that Turley's Eighth Amendment claim clears these hurdles, but his Due Process claim does not, and so we partially reverse the judgment of the district court. Turley's conspiracy claim is super-fluous in light of the fact that all named defendants are state actors.[2]

## I.

Prisoners must properly exhaust all available admin-istrative remedies before pursuing claims, including

---

[2] We need not conduct a separate analysis of the conspiracy claim outside of our treatment of Turley's Eighth Amendment claims. As we noted in *Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009), the function of a conspiracy claim under 42 U.S.C. § 1985(3) is to "permit recovery from a private actor who has conspired with state actors." When, as here, the defendants are all state actors, "a § 1985(3) claim does not add anything except needless complexity." *Id.*

§ 1983 actions, in federal court. Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) (2006). A prisoner must exhaust his grievances in accordance with prison procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 84, 88 (2006). In Illinois, the last level of appeal for a prisoner pursuing a grievance is a final determination by the Director. 20 Ill. Admin. Code 504.850(a)-(f). The exhaustion requirement's primary purpose is to "alert[] the state" to the problem "and invit[e] corrective action." *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004); *see also Jones v. Bock*, 549 U.S. 199, 219 (2007). Exhaustion is an affirmative defense, with the burden of proof on the defendants. *Jones*, 549 U.S. at 203-04; *Maddox v. Love*, 655 F.3d 709, 720 (7th Cir. 2011).

The State asserts that Turley did not exhaust all of his administrative remedies because first, he mentioned only two specific instances of lockdown in his grievances, and second, his latter two grievances did not receive a response. We disagree.

Turley's February 2009 grievance, which was pursued to a final decision by the Director, suffices to exhaust the claims challenging lockdown policy. The state is right that Turley listed only two specific dates of lockdowns, but the state does not note the fact that he also mentioned 14 other lockdown incidents in 2008. Turley was challenging not just specific incidents of lockdown, but Menard's lockdown policies in general. This is confirmed by the 2008 decision letter, which indicates that Turley was challenging lockdown policy as a continuing violation of his rights.

In order to exhaust their remedies, prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing. *See, e.g.*, *Parzyck v. Prison Health Servs. Inc.*, 627 F.3d 1215, 1219 (11th Cir. 2010) (prisoner "not required to initiate another round of the administrative grievance process on the exact same issue each time" a deprivation occurred); *Howard v. Waide*, 534 F.3d 1227, 1244 (10th Cir. 2008); *Johnson v. Johnson*, 385 F.3d 503, 521 (5th Cir. 2004). Separate complaints about particular incidents are only required if the underlying facts or the complaints are different. *See, e.g.*, *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011) (distinguishing *Johnson* and another case finding exhaustion, because in those cases the underlying complaint was the same); *Moore v. Bennette*, 517 F.3d 717, 728-29 (4th Cir. 2008) (finding no exhaustion where prisoner complained of inadequate medical care for Hepatitis C but not for gout). Thus, once a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion requirement. Here, Turley's complaints centered around continuing prison policies, including allegedly illegal lockdowns, and one occurrence of notice from Turley was sufficient to give the prison a chance to correct the problems.

The present grievance was likely sufficient to exhaust all Turley's complaints. For instance, he made related allegations such as that his state stipend was confiscated during lockdowns, and discussed how his tiny cell prevented exercise and how prison officials knew prison conditions led to injuries.

The state's argument that Turley's latter two grievances—those to which he had not received a response when he filed suit—were not exhausted is unpersuasive since the original grievance suffices. [3]

## II.

The State asserts that some portion of Turley's complaint was clearly time-barred and should have been dismissed on this basis. This argument is without merit.

---

[3] Even if Turley's February 2009 grievance were deficient, Turley's August 2009 and 2010 grievances would satisfy exhaustion regardless of the prison's failure to respond. This court has declined to find exhaustion where the prisoner himself made some error in following grievance procedure. *See, e.g., Dixon v. Page*, 291 F.3d 485, 488-89 (7th Cir. 2002) (prisoner failed to exhaust *before* filing suit; failed to appeal to highest level); *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005) (per curiam) (prisoner failed to use sufficient postage). However, when the prisoner follows procedure but receives no response due to error by the prison, this court has found that the prisoner exhausted his administrative remedies. *See, e.g., Dole v. Chandler*, 438 F.3d 804 (7th Cir. 2006) (prisoner's grievance received no response because prison lost it; prisoner waited 18 months before filing suit); *Brengettcy v. Horton*, 423 F.3d 674 (7th Cir. 2005) (grievance received no response; prisoner waited between 1 and 4 months before filing suit); *Lewis v. Washington*, 300 F.3d 829 (7th Cir. 2002) (holding that a prison's failure to respond to a grievance would make remedies "unavailable" and thus the prisoner would have exhausted). Here, Turley committed no procedural error in filing his grievances.

Section 1983 suits in Illinois have a two-year statute of limitations, which is tolled while the prisoner exhausts the administrative grievance process. *Johnson v. Rivera*, 272 F.3d 519, 521-22 (7th Cir. 2001). For continuing Eighth Amendment violations, the two-year period starts to run (that is, the cause of action accrues) from the date of the last incidence of that violation, not the first. *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001) (finding that an Eighth Amendment deliberate indifference claim for failure to treat an inmate's hernia, a continuing violation, accrued when the inmate left the prison). A violation is continuing where "it would be unreasonable to require or even permit [a prisoner] to sue separately over every incident of the defendant's unlawful conduct." *Id.* at 319.

Turley's Eighth Amendment and conspiracy complaints concern continuing actions. The nature of his allegations are that prison officials repeatedly and regularly imposed lockdown for improper purposes, and with each continuing day and period of lockdown, Turley's injuries increased. The statute of limitations began running from the last date of lockdown, or last day confined to the tiny cell, and consequently, Turley is well within the two-year statute of limitations.

Alternatively, Turley's claims could conceivably also be tolled under the cumulative approach to the continuing violation doctrine as described in *National*

*Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).[4]
*Morgan* concerned the timeliness of a hostile work en-
vironment claim brought under Title VII. The Court
held that the continuing violation doctrine applied to
repeated conduct "occur[ing] over a series of days or
perhaps years" in light of the fact that "a single act of
harassment may not be actionable on its own." *Id.* at 115.
Similarly, the case before us focuses on the cumulative
impact of numerous imposed lockdowns.

## III.

Having held that Turley's suit is not procedurally
barred, we must next determine if he has sufficiently
made out a claim to survive dismissal. *Twombly* and
*Iqbal* direct us to consider whether the plaintiff's claims
are plausible. However, it is important to keep in mind
that even after *Twombly* and *Iqbal*, *pro se* complaints like
Turley's are to be construed liberally. *See, e.g., Erickson
v. Pardus*, 551 U.S. 89, 93-94 (2007) (per curiam); *Munson
v. Gaetz*, 673 F.3d 630, 632-33 (7th Cir. 2012). Here,
Turley survives dismissal because his claims are plausible

---

[4] Though *Morgan* concerned Title VII, at least one other circuit
has applied *Morgan* to Eighth Amendment claims arising
from deliberate indifference. *See Shomo v. City of New York*, 579
F.3d 176 (2d Cir. 2009). The *Shomo* Court also noted that *Heard*
comports with "*Morgan*'s application of the continuing viola-
tion doctrine to a series of predicate acts forming the basis for
a single claim." *Id.* at 182. Neither party discussed *Morgan* in
its briefs.

and his complaint sets out more than conclusory statements.

### A.  Eighth Amendment Claims

Turley argues that frequent lockdowns for substantial periods of time have deprived him of exercise and caused him various health issues. The State's response is that Turley has failed to allege a constitutionally sufficient injury, especially since no individual lockdown exceeded 90 days, and the defendants were not deliberately indifferent to Turley's or the other inmates' situation. The district court dismissed this claim because it thought that Turley had not listed specific periods of confinement, but this conclusion is incorrect.

The State relies heavily on *Pearson v. Ramos*, 237 F.3d 881, 886 (7th Cir. 2001), for the notion that there exists an ironclad rule that a denial of yard privileges shorter than 90 consecutive days cannot be the basis for an Eighth Amendment claim. However, the State has misconstrued this rule. In *Pearson*, we stated that we thought "it a reasonable rule that a denial of yard privileges for no more than 90 days at a stretch is not cruel and unusual punishment." *Id.* at 884. However, we were careful to explain that the "norm of proportionality" would guide the acceptable duration of lockdown. Even a lockdown not exceeding 90 days could violate that norm if it were "impos[ed] . . . for some utterly trivial infraction of the prison's disciplinary rules." *Id.* at 885. *Pearson* focused on the period of confinement for a single prisoner in response to that prisoner's specific actions, so

that the prison's decision "[t]o confine in 'solitary' a prisoner who behaves like a wild beast whenever he is let out of his cell is the least cruel measure that occurs to us for dealing with such a person." *Id*. In contrast, here we are confronted with a pattern of prison-wide lockdowns, which Turley alleges occurred for flimsy reasons or no reason at all.

In a similar unit-wide lockdown case, this court found a viable claim for deprivation of exercise. In *Antonelli v. Sheahan*, 81 F.3d 1422 (7th Cir. 1996), a prisoner was housed in a cramped cell with "no room" to exercise and "not permitted to recreate 'for periods up to seven weeks in succession,' and at most, was called 'once every two weeks for sessions of no longer than one hour at one time.'" *Id.* at 1432. The court in *Antonelli* noted that no doubt the State would raise any valid justification for the restriction "in due course," but that "at this stage," the prisoner had a viable claim for deprivation of exercise. *Id.*

Turley has not had the benefit of discovery, and the defendants have yet to answer the complaint. Turley has alleged sufficiently serious injuries stemming from his confinement without exercise, including irritable bowel syndrome, severe stress, headaches and tinnitus. He alleges that he could not "improvise" with in-cell exercise, because the unencumbered floor space in his tiny cell measured only 7'8" by 1'7", which is not even enough space to lie down, much less exercise. Turley filed numerous grievances involving the issue, directed at a similar group of defendants. Similar allegations were sufficient to show deliberate indifference in other

cases. *See, e.g.*, *Delaney v. DeTella*, 256 F.3d 679, 685-86 (7th Cir. 2001) (requiring 5 hours of exercise per week after 90 days segregation due to grievances filed and medical care sought). The State is free to produce evidence or studies, if any exist, that the intervals between weeks-long (or even months-long) lock-downs are sufficiently restorative.

As for deliberate indifference, Turley filed multiple grievances about the conditions at Menard, including in his October 2010 grievance specific challenges to the small cells. The administration should have been well aware of multiple grievances from inmates regarding small cells. In fact, Menard was the subject of numerous past lawsuits, including one specifically describing and ordering a remedial plan for overcrowding, small cells and lack of adequate medical care and hygiene, all conditions similar to those described by Turley. *See Lightfoot v. Walker*, 486 F.Supp. 504, 511 (D.C. Ill. 1980). Finally, in *Munson v. Hulick*, 2010 WL 2698279 (S.D. Ill. July 7, 2010), a complaint similar to Turley's passed § 1915A screening. There, a Menard prisoner challenged the same 40' cells where two inmates were confined for 21-22 hours per day, and the court allowed the claim to proceed, finding that the grievances by the plaintiff and other prisoners were sufficient to provide notice to prison officials.

## B.  Due Process Claim

The district court did not address Turley's Due Process claim. Turley alleges that when he was on lockdown,

he was not paid his $10 per month state stipend, provided for in a state administrative directive. The State argues that first, Turley had no property interest in his stipend, and second, he was not denied Due Process through loss of the stipend, but rather had several avenues of recovery open to him, specifically an action in the Court of Claims to challenge the deprivation. We will assume without deciding that Turley has a property interest in the stipend he would have received had he not been in segregation.[5] However, we agree with the State's second argument.

The Illinois Court of Claims provides an exclusive remedy for "[a]ll claims against the State founded upon any law of the State of Illinois or upon any regulation adopted thereunder by an executive or administrative officer or agency," 705 ILCS 505/8(a), and "[a]ll claims

---

[5] While we have found that Illinois law does not create a property interest in prison employment, *see Wallace v. Robinson*, 940 F.2d 243 (7th Cir. 1991) (en banc), that is not quite the issue presented here. This case involves unassigned pay potentially unlawfully withheld during wrongful segregation. The Illinois Court of Claims has noted that though "an inmate in a correction institution in . . . Illinois does not have a right to a job", he "ha[s] a right to his unassigned pay [if] he was wrongfully placed in segregation." *Pippion v. State*, 43 Ill. Ct. Cl. 327, 328 (1990). In cases decided after *Wallace*, the Illinois Court of Claims has pondered, without deciding, the interests at stake in matters of stipend confiscation. *See Turner-El v. Illinois Bd. of Educ.*, 1995 WL 506011, *8 (N.D. Ill. Aug. 22, 1995).

against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit," 705 ILCS 505/8(d). The Illinois Court of Claims has recognized that prisoners do have a right to their unassigned pay when not in segregation, even though they do not have a right to a job or wages therefrom while in prison. *Pippion v. State*, 43 Ill. Ct. Cl. 327, 328 (1990). The Court of Claims has consistently awarded prisoners "back pay" when they were denied their stipend during unlawful confinement in segregation.

There is nothing to indicate that this post-deprivation remedy is inadequate in Turley's case. The monetary amount in question is rather small,[6] and it is unclear what value additional safeguards would provide. *Cf. Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976). As Turley had the opportunity for an adequate post-deprivation remedy, and his deprivation was not of a type that would require a pre-deprivation hearing, his Due Process claim must fail. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982).

We REVERSE IN PART and AFFIRM IN PART the judgment of the district court.

---

[6] We note that prisoners often do not have full enjoyment of their earnings, as these earnings may be reserved for restitution. The Eighth Circuit has determined that post-deprivation procedures are adequate for recovering victim restitution payments from an inmate's prison trust account or freezing them. *Mahers v. Halford*, 76 F.3d 951, 955 (8th Cir. 1996).

EASTERBROOK, *Chief Judge*, concurring. Although I join the court's opinion, I think it helpful to elaborate on the limitations issue discussed in Part II.

Turley contends that his suit is timely because the lockdowns constituted a "continuing violation" and the suit was filed within two years of the most recent lockdown. He relies on *Heard v. Sheahan*, 253 F.3d 316 (7th Cir. 2001), which used that phrase, but later decisions such as *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007), and *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), show that some refinement is essential.

That something is continuing could matter to the period of limitations in at least three ways:

- Violations begin and continue, and the prevailing rule treats new acts, or ongoing inaction, as new violations. The eighth amendment creates such a doctrine: failure to treat a significant painful medical condition, with deliberate indifference to the prisoner's situation, is a form of inaction that offends the Constitution. *Estelle v. Gamble*, 429 U.S. 97 (1976). The period of limitations runs from each independently unlawful act or failure to act.

- Deeds that are not themselves violations of law become actionable if they add up. This situation was addressed by the hostile-environment part of *Morgan*, 536 U.S. at 115–21. One or two offensive remarks do not violate Title VII, but a cascade of remarks over the course

of months may do so—and *Morgan* holds that the period of limitations for a hostile-environment claim runs from the last remark rather than the first.

- A discrete wrongful act causes continuing harm. *Morgan* and *Ledbetter* hold that a continuation of injury does not extend the period of limitations. 536 U.S. at 110–15. Likewise a new discrete violation does not extend the time to sue about an old discrete violation, even if the new violation occurs while the injury from the old discrete violation continues.

Grouping all three of these situations under a single name has the potential for confusion—a potential realized here, where the parties discuss *Heard*, which deals with the first situation, as if it were an exemplar of the second. And on other recent appeals lawyers have treated continuing injury, the third situation, as if it were the same as ongoing wrongs.

Giving different things different names promotes clarity of thought. The first situation is a genuine continuing violation. The second should be called a cumulative violation. And the third should be labeled a continuing injury.

Lockdowns of 90 days or fewer are not independent violations of the eighth amendment. But lockdowns that cumulate to much longer periods, with only short breaks, may be. This case thus is within the scope of the cumulative-violation doctrine, for the reasons given in

*Morgan*, 536 U.S. at 115–21. But the fact that Turley may continue to suffer injury from lockdowns has no bearing on the period of limitations.

The court reaches this conclusion, though using different terminology, so I join its opinion.