NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 21, 2014[*]
Decided March 13, 2014

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 13-1628

| | |
|---|---|
| | Appeal from the |
| LAVERTIS STEWART, | United States District Court for the |
| *Plaintiff-Appellant,* | Northern District of Illinois, |
| | Western Division. |
| *v.* | |
| | No. 12 C 50273 |
| SPECIAL ADMINISTRATOR OF THE | |
| ESTATE OF ANTREAS MESROBIAN, *et al.,* | Philip G. Reinhard, |
| *Defendants-Appellees.* | *Judge.* |

**O R D E R**

LaVertis Stewart, a 58-year-old Illinois inmate, appeals from the dismissal at screening of his civil-rights suit. *See* 28 U.S.C. § 1915A. He claims that he suffers cruel and unusual punishment when forced to wear a security box over his handcuffs, which

---

[*] The appellees were not served with process in the district court and are not participating in this appeal. After examining the appellant's brief and the record, we have concluded that the case is appropriate for summary disposition. *See* FED. R. APP. P. 34(a)(2)(C).

causes severe pain because of carpal tunnel syndrome in both wrists and chronic pain in his right shoulder. We vacate the judgment in part and remand for further proceedings.

For purposes here, we accept as true Stewart's factual allegations. He receives physical therapy in prison for his carpal tunnel syndrome and bursitis in his shoulder. He also suffers from cirrhosis of the liver and leaves the prison every month or two for medical treatment. During these trips, which last at least eight hours, Stewart must wear the security box unless granted an exemption by the prison's medical director. (The security box covers the handcuff locks and forms a rigid link between the wrists.) Stewart experiences severe pain from the security box while wearing it, and for several days afterward, he has pain, numbness, and swelling in his wrists and substantial pain in his shoulder. In March 2009 he alerted the medical director, Dr. Antreas Mesrobian, about the pain he experienced. Dr. Mesrobian promised to issue an exemption, but when Stewart prepared to leave the prison for treatment in April and told the guards about the exemption, they didn't find one in his file. The guards checked with a nurse and were told that Dr. Mesrobian would not issue an exemption.

Stewart saw Dr. Mesrobian later that day and again in May, both times emphasizing that the security box causes him severe pain, but Dr. Mesrobian refused to order an exemption. Stewart submitted a grievance in June 2009 and appealed to the Administrative Review Board when it was denied. The Board referred the matter to medical personnel for review in July 2010 (we are not told the reason for the long turnaround), and the next month Stewart received a six-month exemption from Dr. Imhotep Carter, who had replaced Dr. Mesrobian as medical director. That exemption eventually expired after several renewals, and beginning in May 2012, Stewart again was forced to wear the security box.

Stewart brought this action in July 2012 claiming that Dr. Mesrobian and several unnamed guards had been deliberately indifferent to the pain caused by the security box. He asked the district court to enlist counsel. At screening the court dismissed the suit as against the guards because, by Stewart's account, they had responded to his reports of pain by verifying with the nurse that an exemption wouldn't be authorized. The court also dismissed without prejudice the claim against Dr. Mesrobian, explaining that he had died and that Stewart would need to substitute a party for him. The court denied Stewart's request for counsel, reasoning that the case was not overly complex, and gave Stewart 45 days to amend his complaint. The court later extended that deadline.

Stewart timely submitted an amended complaint naming as a defendant the "special administrator" of Dr. Mesrobian's estate (and asking the district court to appoint one). He also named Dr. Carter in his official capacity (although by that time Dr. Carter had been replaced as medical director), and the director of the Department of Corrections. Stewart again asked the court to enlist counsel, pointing out that Dr. Mesrobian's death complicated his case and that he had been unable to find relevant information about the doctor's estate. The court screened the amended complaint, which seeks damages and an injunction against use of the security box, and this time dismissed it with prejudice on the ground that Stewart's allegations make apparent that the statute of limitations bars his claims against Dr. Mesrobian's estate and the medical director. In addition, the district court concluded that the medical director could not be joined in a suit against Dr. Mesrobian's estate. Finally, the court also rejected Stewart's claim against the IDOC director because, it reasoned, a general policy of using security boxes does not violate the Eighth Amendment.

On appeal Stewart argues that his claim against Dr. Mesrobian's estate was timely. The limitations clock began ticking, according to the district court, in May 2009 when Dr. Mesrobian refused to issue an exemption after Stewart complained a third time about the pain caused by the security box. The court acknowledged that Stewart had tolled the statute of limitations the following month by submitting a grievance. But the tolling period ended in July 2010, the court concluded, and thus the limitations period expired in June 2012—a little more than two weeks before Stewart signed his original complaint.

As Stewart correctly argues, however, the district court based its calculations on the wrong starting date. He claims that he experienced severe pain every time he wore the security box; each instance represents another potential violation and a new limitations period, and when evaluating the timeliness of his claim, the last violation is what matters. *See United States v. Midwest Generation, LLC*, 720 F.3d 644, 646–47 (7th Cir. 2013); *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013); *Heard v. Sheahan*, 253 F.3d 316, 318–20 (7th Cir. 2001). Stewart says the last violation during Dr. Mesrobian's tenure as medical director happened in October 2009. For purposes of screening, that is when the claim accrued, but the limitations period was tolled until the grievance already filed by Stewart was resolved. *See Turley*, 729 F.3d at 651; *Johnson v. Rivera*, 272 F.3d 519, 522 (7th Cir. 2001). That didn't happen until an exemption was granted in August 2010, less than two years before Stewart filed his original complaint.

Although the limitations period expired before Stewart amended his complaint in November 2010, that complaint will relate back if the defendants received notice of the suit within 120 days of his timely filed complaint. *See* FED. R. CIV. P. 15(c), 4(m); *Krupski v. Costa Crociere S.P.A.*, 560 U.S. 538, 548 (2010) ("Rule 15(c)(1)(C)(ii) asks what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing her original complaint."). The 120 days did not start until the district court granted Stewart's application to proceed in forma pauperis on August 8, 2012, *see Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548, 557 n.5 (7th Cir. 1996), so Stewart had until December 6 to provide notice absent an extension for good cause. He filed his amended complaint by giving it to the prison mailroom more than three weeks before that deadline. Of course, no defendants actually received notice because the district court dismissed the amended complaint at screening, but that should not count against Stewart. The amended complaint had to pass screening before any defendant could be served with process, *see Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004), and the delay attributable to screening was outside of Stewart's control and constituted good cause to extend the time for notice, *see Graham v. Satkoski*, 51 F.3d 710, 712–13 (7th Cir. 1995) (concluding that delay attributable to Marshals Service constituted good cause); *Sellers v. United States*, 902 F.3d 598, 602 (7th Cir. 1990) (concluding that failure of Marshals Service to identify and serve defendant after receiving sufficient information from prisoner is "automatically good cause"); *Palk v. Dep't of the Air Force*, 830 F.2d 79, 83 (7th Cir. 1987) (explaining that screening tolls statute of limitations); *Robinson v. Clipse*, 602 F.3d 605, 608 (4th Cir. 2010) (concluding that delay attributable to screening doesn't count against Rule 4(m)'s 120 days); *Richardson v. Johnson*, 598 F.3d 734, 738–39 (11th Cir. 2010) (explaining that delay attributable to Marshals Service constitutes good cause); *see also Urrutia v. Harrisburg Cnty. Police Dep't*, 91 F.3d 451, 459 (3d Cir. 1996) (suspending 120-day period until service of amended complaint is authorized).

So the district court should not have dismissed as untimely the claim against Dr. Mesrobian's estate, and looking to the merits, we conclude that Stewart's allegations are sufficient to state a claim. Using a security box is permissible in some settings. *See Bruscino v. Carlson*, 854 F.2d 162, 166 (7th Cir. 1988) (concluding that use of security box was reasonable given history of violence at prison); *Fulford v. King*, 692 F.2d 11, 14–15 (5th Cir. 1982) (concluding that forcing prisoners to wear security box while outside prison did not violate Eighth Amendment). But even security measures as ordinary as handcuffs can be used in ways that violate the constitution. *See Hope v. Pelzer*, 536 U.S. 730, 738 (2002) (holding that prisoner's allegations, including that he suffered unnecessary pain while handcuffed for seven hours, were sufficient to state

Eighth Amendment violation); *Payne v. Pauley*, 337 F.3d 767, 774–75 (7th Cir. 2003) (reversing summary judgment on Fourth Amendment claim of excessive force based in part on overly tight handcuffs). Stewart alleges that his carpal tunnel syndrome and bursitis make use of a security box extremely painful and thus inappropriate for him, a fact known but disregarded by Dr. Mesrobian and, apparently, the current medical director. We cannot say at this stage that Stewart's allegations are implausible, particularly since medical exemptions are available and Stewart received one for an extended period after his grievance reached the Administrative Review Board.

This does not mean that Stewart has cleared all procedural hurdles relating to Dr. Mesrobian's estate. The district court may appoint a "special administrator" consistent with Illinois law only if a state judge has not opened the estate already; otherwise, Stewart must sue the personal representative of the estate. *See* 735 ILL. COMP. STAT. 5/13-209(b); *Anderson v. Romero*, 42 F.3d 1121, 1125 (7th Cir. 1994) (appointing as special administrators the lawyers who were representing Illinois inmate who died intestate while suit under 42 U.S.C. § 1983 was pending); *see also Ward v. Edgeton*, 59 F.3d 652, 653 (7th Cir. 1995) (explaining that provision in 42 U.S.C. § 1988 authorizing federal courts to borrow from state law as necessary to provide complete remedy in § 1983 actions empowered court of appeals to appoint special representative for inmate who died while appeal was pending); *Slade for Estate of Slade v. U.S. Postal Serv.*, 952 F.2d 357, 360 (10th Cir. 1991) (substituting decedent's wife as plaintiff when no representative had been appointed). Additionally, the application of Illinois law would bar Stewart's suit unless the estate is covered by liability insurance because Dr. Mesrobian died more than two years before Stewart filed his complaint. *See* 755 ILL. COMP. STAT. 5/18–12(b), (c); *Water Tower Nursing & Home Care, Inc. v. Estate of Weil*, 988 N.E.2d 217, 221 (Ill. App. Ct. 2013). We don't know whether an Illinois court has opened an estate for Dr. Mesrobian, or whether his estate is covered by liability insurance. In fact, we don't even know that the estate would have been probated in Illinois, for it appears that Dr. Mesrobian died in California. *See Antreas D. Mesrobian Obituatary*, THE DESERT SUN, http://www.legacy.com/obituaries/thedesertsun/obituary. aspx?page=notice&pid=138787950 (last visited Feb. 24, 2014). Under California law if Dr. Mesrobian's estate is covered by insurance, Stewart could proceed directly against the insurer without naming any estate representative. *See* CAL. PROB. CODE § 550(a). The district court didn't address Stewart's renewed motion for counsel given its ruling on the statute of limitations, but it will need to take up that motion on remand in light of these issues. *See Pruitt v. Mote*, 503 F.3d 647, 656–59 (7th Cir. 2007) (en banc).

        As for the other defendants, Stewart argues, and we agree, that the district court erred by dismissing his claim against the medical director in his official capacity. Stewart seeks an injunction against use of the security box. He says that he wore the security box as recently as May 2012, and nothing in the record suggests that use of the security box is not ongoing and will not continue. Moreover, we disagree with the district court that the claim against the medical director is unrelated to the claim against Dr. Mesrobian's estate and cannot be joined in the same lawsuit. The court cited *George v. Smith*, 507 F.3d 605, 606–07 (7th Cir. 2007), but that decision dealt with 24 defendants and dozens of distinct suits and unrelated claims all heaped into one complaint that we called "sprawling," a "blunderbuss," and a "mishmash." That is far from this case. Stewart's claims all relate to alleged continuing violations that are properly joined in one suit. *See* FED. R. CIV. P. 20(a)(2); *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012) ("Joinder that requires the inclusion of extra parties is limited to claims arising from the same transaction or series of related transactions.").

        We conclude, however, that the district court properly dismissed Stewart's claim against the director of the Department of Corrections alleging that it is the departmental policy to use security boxes to "torture" inmates. The court construed this as a broad attack on the use of security boxes generally; Stewart insists that he challenges only the specific way the boxes are used at his prison—with an inmate's wrists facing opposite directions, one up and the other down. Yet Stewart's complaint says too little to make even this narrower theory plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Brooks v. Pactiv Corp.*, 729 F.3d 758, 763 (7th Cir. 2013). He speculates that the prison's preferred wrist position must have nothing to do with preventing prisoners from picking the handcuff locks (which is what the guards told him) because the security box itself is designed to thwart that. But he alleges nothing that might turn this speculation into a plausible inference.

        The district court also properly dismissed Stewart's claim against the unnamed guards. His allegations do not plausibly suggest that they were deliberately indifferent to his complaints of severe pain. *See Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Earl v. Racine Cnty. Jail*, 718 F.3d 689, 692 (7th Cir. 2013). Indeed, his allegations suggest the opposite, for he says that the guards responded to his complaints by looking in his file for an exemption and then following up to see whether Dr. Mesrobian would issue one.

        Accordingly, we VACATE the judgment dismissing the claims against Dr. Mesrobian's estate and the medical director and REMAND those claims for further proceedings. In all other respects the judgment is AFFIRMED.