**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 31, 2022[*]
Decided June 3, 2022

*Before*

FRANK H. EASTERBROOK, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 21-1585

| | |
|---|---|
| TITUS HENDERSON, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Western District of |
| | Wisconsin. |
| *v.* | |
| | No. 18-cv-680-jdp |
| CATHY JESS, et al., | |
| *Defendants-Appellees.* | James D. Peterson, |
| | *Chief Judge.* |

**O R D E R**

Titus Henderson, a Wisconsin inmate, sued prison officials under a variety of legal theories, claiming they denied him prayer oil, religious meals, and religious books. The district court entered summary judgment for the defendants, rejecting the claims as unexhausted, moot, untimely, or barred by qualified immunity. We affirm.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

# I. Background

Henderson, who is Black and Muslim, was held at the Wisconsin Secure Program Facility from 2003 to 2015. Because of assaults on guards and other misconduct, he was often housed in segregation. During bouts of segregation from 2010 to 2014, Henderson contends, he was denied three kinds of religious accommodations.

First, he says the prison denied him prayer oil during the moveable holy month of Ramadan each year from 2010 through 2014. The prison's policies generally allow inmates one ounce of oil at a time but also permit staff to deny oil for security reasons. At summary judgment the defendants could produce no record or recollection of anyone denying Henderson oil but posited that—considering his history of assaults— any denial would have been based on the danger that he would use oil to slip out of handcuffs, make the floor slick, or otherwise impede staff tasked with restraining him.

Second, Henderson says the prison refused him a Ramadan meal schedule—two meals, delivered before and after sunrise, to accommodate daytime fasting—each Ramadan from 2010 to 2014. Though the defendants acknowledged a 2010 grievance alleging similar conduct, their only detailed records of a complete Ramadan-schedule denial concerned 2012. Over three days that year, they say, Henderson assaulted an officer, refused to return a meal tray, and threw his milk. The prison security director, Jerome Sweeney (who is not a defendant), then ordered two defendants—Todd Overbo (a prison chaplain) and Anthony Broadbent (a food-services administrator)—to take Henderson off that year's Ramadan-meal list and place him on the default schedule.

Third, Henderson says the prison would not let him have adequate Islamic reading materials while he was in segregation.

In 2018, Henderson sued Cathy Jess (a statewide administrator for the Wisconsin Department of Corrections), Overbo, and Broadbent, plus other officials: two wardens, another chaplain, a food-services supervisor, a program supervisor, and a correctional officer. Henderson cited the First, Fourteenth, and Eighth Amendments, as well as the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc.

The defendants pursued two motions for judgment without trial. First, they moved for partial summary judgment on the ground that Henderson failed to exhaust administrative remedies for all claims except the Ramadan-meal theories from 2010 and

2012. *See* 42 U.S.C. § 1997e(a). The defendants' second motion sought summary judgment on various other grounds for any exhausted claims.

Henderson, for his part, requested an evidentiary hearing under *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008) (en banc), to resolve any disputes about exhaustion. Yet he identified no particular dispute of fact, asserting only generally that the parties' affidavits could not be reconciled with one another.

Henderson's response brief opposing the defendants' first motion also accused them of overlooking certain grievances, copies of which the defendants then attached to a reply brief. Henderson's response brief further asserted that the reason he failed to administratively appeal the denial of many of his initial grievances was that he lacked access to postage. The defendants' reply brief, however, included a copy of a Wisconsin Administrative Code provision showing that postage was available to Henderson.

In three orders, the district court dismissed or denied all claims. The first order concluded that Henderson had not exhausted his Ramadan-meal claims for 2011, 2013, and 2014: postage had been available if Henderson sought it, so he was responsible for failing to administratively appeal the denials of his grievances for those years. As for religious texts, the court opined, Henderson had objected only wholesale to the prison's default limit on the number of books inmates in segregation could possess: one religious text, a dictionary, two puzzle books, and two library books. Because he did not alert prison staff that the basis for this objection was religious, the court reasoned, his religious-books claim was not exhausted.

Henderson then asked the district court to reconsider these rulings. But in a second order, the court denied this motion. The court rejected Henderson's new argument that grievances he filed in 2010 and 2012 about the meal schedule sufficed to preserve any Ramadan-meal claims from 2011, 2013, and 2014. The grievances he filed in 2011, 2013, and 2014 alleged that his Ramadan meals were incomplete or lacking in calories, not that he been taken off the Ramadan schedule. In the court's view, because Henderson's difficulties during Ramadan each of those years did not stem from the same prison decision or policy as the issues covered by the 2010 and 2012 grievances, the alleged denials were not all part of one continuing violation.

In a third order, the court entered judgment for the defendants on Henderson's remaining claims. To start, the court concluded that Henderson's claims under the Religious Land Use and Institutionalized Persons Act were not actionable here because

the Act provides only for prospective relief against government officials, *see Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012), and there was no substantial reason to expect the defendants would similarly injure Henderson in the future (in large part because he was transferred to another prison in 2015 and claimed no misconduct after that).

Regarding prayer oil, the court granted the defendants qualified immunity on Henderson's free-exercise theory under the First and Fourteenth Amendments. (Because of gaps in the defendants' records, the court assumed that this claim had been exhausted.) Citing the reasonableness test of *Turner v. Safley*, 482 U.S. 78, 89–91 (1987), the court questioned whether allowing Henderson a small quantity of oil would pose an appreciable security risk; even so, no precedent clearly established that the denial of prayer oil on these grounds would be unreasonable, and so the court ruled that the defendants were entitled to qualified immunity.

Similarly, although Henderson argued that denying him prayer oil was so irrational it violated his right to equal protection, the court concluded that qualified immunity barred that theory as well because Supreme Court and Seventh Circuit precedents did not clearly establish that a prisoner could bring a class-of-one claim of this sort. Henderson also contended that the prison denied him oil because he was Black and Muslim, but the court determined that the summary judgment record contained no evidence from which a juror could infer intentional discrimination.

That left Henderson's Ramadan-meal claims from 2010 and 2012. The court held that Henderson's claims about the 2010 meals—raised in 2018—were barred by Wisconsin's limitation period, which in 2010 was six years. *See* WIS. STAT. § 893.53 (amended to three years in 2018). As for the 2012 meals, the court ruled that Henderson had sued the wrong people: none of the named defendants had made the decision to remove him from the Ramadan-meal list. For that reason, a juror could not infer from the summary judgment record that any named defendant had violated his free-exercise rights or his right against cruel and unusual punishment. As an alternative ground for denying the free-exercise claim, the court cited qualified immunity.

## II. Analysis

On appeal, Henderson makes four narrow arguments: (1) he was entitled to have his claims resolved by a three-judge panel of the district court under a statute that was repealed in the 1970s; (2) he deserved a *Pavey* hearing; (3) all his claims were exhausted; and (4) the defendants were not entitled to qualified immunity. He says nothing further

about the Religious Land Use and Institutionalized Persons Act, and so neither do we. The same goes for Henderson's claim of intentional racial and religious discrimination and for the untimeliness of his 2010 meal claim.

To start, Henderson was not entitled to a three-judge district court. Although the statute he cites, 28 U.S.C. § 2281, once required three district judges for some actions challenging the constitutionality of state regulations, the statute was repealed in 1976. *See Shapiro v. McManus*, 577 U.S. 39, 40–41 (2015). Today a three-judge panel is required only for certain election-law actions. *See* 28 U.S.C. § 2284.

Next, Henderson was not entitled to a *Pavey* hearing. The purpose of an evidentiary hearing under *Pavey* is to resolve factual disputes bearing on exhaustion. *Wagoner v. Lemmon*, 778 F.3d 586, 591 (7th Cir. 2015). When two affidavits conflict, a hearing allows the district judge to resolve the conflict by evaluating each witness's credibility. Here, though, Henderson did not dispute any specific facts in the defendants' summary judgment materials; he made only a blanket assertion that the affidavits conflicted. Henderson's appellate briefs offer no clarity on this point. And the district court appears to have accepted all of Henderson's specific statements about his prison grievances but also credited the defendants' specific statements that he did not contradict. The district court therefore did not need to hold an evidentiary hearing.

Henderson also argues that he exhausted administrative remedies concerning religious books and problems with the 2011, 2013, and 2014 Ramadan meals. At the outset, he objects to the district court's consideration of materials (grievances and Wisconsin regulations) attached to the defendants' reply brief rather than submitted with their initial motion. But Henderson himself made these materials relevant by mentioning the grievances and raising his postage argument in response to the defendants' first motion for summary judgment. His argument opened the door for defendants to submit these materials. *See Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 318 (7th Cir. 2003).

Henderson further contends that the denials of books and meals were part of a continuing violation, meaning he need not have filed more than one grievance for the duration of the violation. *See Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). But, for the continuous-violation doctrine to apply, the grievances on file must afford the prison notice of the precise claim at issue in the later lawsuit. *Id*. And Henderson did not submit any grievances about a religious need for books. Instead, his grievances objected only on general grounds to the limits on "personal" books (one religious text, a

dictionary, two puzzle books, and two library books). Though religious texts were included in those limits, a claim based on religious rights was not apparent.

Henderson's Ramadan-meal claims from 2011, 2013, and 2014 have a similar problem. In 2010 and 2012, Henderson objected to being taken off the Ramadan schedule altogether. But in 2011, 2013, and 2014, his grievances alleged issues with particular Ramadan meals he was given (for example, missing items and low-calorie counts). These grievances concerned different decisions and decision-makers than his alleged Ramadan-meal list denials in 2010 and 2012. *See id.* For that reason, he needed to administratively appeal the denial of the 2011, 2013, and 2014 grievances if he wished to pursue related claims in federal court; appealing the 2010 and 2012 denials did not cover these claims.

Finally, Henderson argues that the defendants were not entitled to qualified immunity—neither on his class-of-one equal-protection claims nor on his free-exercise claims. But even assuming his class-of-one claims may be cognizable in the abstract, the relevant law is not "clearly established" for purposes of qualified immunity. *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) ("[T]he clearly established right must be defined with specificity."). Henderson does not cite any class-of-one precedent on religious accommodations for inmates. Meanwhile, the Supreme Court has said that government employees may not use class-of-one claims to challenge employment decisions because of the "vast array of subjective, individualized assessments" involved. *See Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 603–04 (2008). It is far from clear that an inmate of the state can bring a class-of-one claim when an employee of the state cannot.

As for prayer oil, Henderson cites two cases, but neither clearly establishes a right to possess religious items that prison officials believe will create a security risk. In the first case, *Charles v. Verhagen*, the district court determined that a blanket ban on prayer oil did not violate the Free Exercise Clause but did violate the Religious Land Use and Institutionalized Persons Act. 220 F. Supp. 2d 937, 938 (W.D. Wis. 2002). On appeal we rejected the defendants' claim that the Act exceeded Congress's authority, but we had no occasion to review the district court's First Amendment ruling. *Charles v. Verhagen*, 348 F.3d 601, 604–05 (7th Cir. 2003). In the second case, *O'Lone v. Estate of Shabazz*, the Supreme Court held that prison officials did *not* violate the Free Exercise Clause by preventing Muslim inmates from attending weekly religious services on Fridays. 482 U.S. 342, 352 (1987). In sum, these cases do not help Henderson overcome qualified immunity.

As for Henderson's 2012 meal claim, we need not resolve whether qualified immunity would protect the security director who ordered Henderson removed from the Ramadan-meal list because that person was not among the defendants. Henderson does not tell us why the district court's ruling that he sued the wrong defendant is incorrect. In a civil-rights action under 42 U.S.C. § 1983, plaintiffs must sue the people personally responsible for the violation. *See Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018). Henderson did not.

                                                                                                      AFFIRMED