NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 17, 2022[*]
Decided October 18, 2022

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 21-3152

| | |
|---|---|
| JOHN A. HAWKINS-EL, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of |
| | Indiana, South Bend Division. |
| *v.* | |
| | No. 3:21-CV-527-JD-MGG |
| WILLIAM HYATTE, et al., | |
| *Defendants-Appellees*. | Jon E. DeGuilio, |
| | *Chief Judge*. |

**O R D E R**

John A. Hawkins-El, an Indiana prisoner, sued prison officials and a National Guard member for violating his Eighth Amendment rights by failing to protect him from one or more assailants. See 42 U.S.C. § 1983. The district court dismissed the claims after giving him a chance to amend them, ruling that Hawkins-El did not allege

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

that the defendants knew he was at serious risk of attack. For the same reason, we affirm.

We take Hawkins-El's factual allegations from the operative complaint as true and draw all reasonable inferences in his favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). His prison, the Miami Correctional Facility, had a staff shortage that prompted the warden to call in the National Guard for support. One afternoon, a shift supervisor removed a staff officer from Hawkins-El's housing unit, leaving no other staff officers to watch the unit. While the unit lacked a staff officer, a National Guard member buzzed prisoners into Hawkins-El's unit, and the unit entered lockdown. The National Guard member did not ask the prisoners to identify themselves when they entered. One or more of the entering prisoners stabbed Hawkins-El multiple times.

Hawkins-El sued the warden and "John Doe" officers of the prison and National Guard for violating his Eighth Amendment rights by failing to protect him from the attack. Liberally construing his complaint, we presume that the "John Does" refer to all officers Hawkins-El mentioned: the shift supervisor who ordered the staff officer to leave the unit, the staff officer himself, and the National Guard member who controlled the unit's door. The district court dismissed the suit. It reasoned that Hawkins-El did not state an Eighth Amendment claim because he did not allege that any defendant was aware of a threat to his safety. Hawkins-El appeals the dismissal, limiting his challenge to claims against the defendants in their personal capacities.

To plead a claim that prison officials violated his Eighth Amendment rights by failing to protect him from an attack, Hawkins-El must allege facts suggesting that the officials were deliberately indifferent to his safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 839–40 (1994). But because "prisons are dangerous places" and guards lack "control over crowding and other systemic circumstances," *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004), "failure to provide protection constitutes an Eighth Amendment violation only if deliberate indifference by prison officials to a prisoner's welfare 'effectively condones the attack by allowing it to happen.' . . . [This means that the plaintiff] had to allege facts sufficient to show 'that the defendants had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.'" *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (quoting *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997)). But despite a chance to amend his claim, Hawkins-El never alleged that any officer ignored a known, preventable threat that was unique to him or shared by a group with which he was affiliated.

We begin with the National Guard member monitoring the door to Hawkins-El's unit. Hawkins-El does not state whether this guard was acting under state law, see 42 U.S.C. § 1983, or federal law, see *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). But this claim fails either way because the guard did not violate Hawkins-El's Eighth Amendment rights. Hawkins-El alleges only that the guard allowed people into the unit without asking them to identify themselves. This omission may have denied the guard knowledge of the names of Hawkins-El's attackers at the time of the attack. But the omission did not give the guard knowledge that any of the entering prisoners were going to attack anyone. Thus the guard cannot be liable for deliberate indifference to Hawkins-El's safety.

We turn next to the warden. Hawkins-El argues that the warden knew that the prison had a staff shortage, rendering it unusually dangerous. But this is insufficient because Hawkins-El does not contend that the warden "gratuitously" created that shortage. See *Riccardo*, 375 F.3d at 525. To the contrary, he alleges that the warden tried to remedy the problem by calling in the National Guard. This allegation defeats his claim that the warden disregarded the safety risks to him. See *Farmer*, 511 U.S. at 844.

Finally, Hawkins-El also did not plead an Eighth Amendment claim against the unit's shift supervisor (who removed the staff officer from the unit) or the staff officer who left that unit. Neither the removal of the staff officer, nor that officer's obedience to the removal order, gave either one knowledge of an impending attack. See *Santiago*, 599 F.3d at 756. Further, three other features of Hawkins-El's complaint undermine an inference that they deliberately ignored his safety: The unit went on lockdown until an officer could be stationed there; a National Guard member was stationed at the door to the unit; and Hawkins-El does not contend that the supervisor or staff officer knew that the guard did not ask the prisoners their names. We thus cannot infer either defendant knew that moving the staff officer from the unit would imperil Hawkins-El's safety.

AFFIRMED