896 F.Supp. 808 (1995)
Cleo LOVE, Plaintiff,
v.
Danny McBRIDE, Defendant.
No. 3:94-CV-371 RM.
United States District Court, N.D. Indiana, South Bend Division.
May 23, 1995.
*809 John W. Emry, Jr., Franklin, IN, for plaintiff.
David A. Arthur, Indiana Attorney General, Indianapolis, IN, for defendant.

MEMORANDUM AND ORDER
MILLER, District Judge.
Cleo Love brought this action under the Americans with Disabilities Act, alleging that by reason of his disability, he was excluded from participation in certain programs and denied the benefits of certain services. After a three-day trial, the jury returned its verdict finding that Westville Correctional Center ("WCC") had violated Mr. Love's rights under the ADA, but not finding that the violation was intentional. The jury awarded Mr. Love $1,000.00 in damages. On April 14, the clerk entered judgment in accordance with the jury verdict.
Mr. Love seeks a new trial limited to the issue of damages or, in the alternative, for a new trial on the issues of liability and damages. He also seeks an extension of time within which to file his attorney's fee petition.
The court may grant a motion for new trial provided that the jury's verdict is against the clear weight of the evidence. McNabola v. Chicago Transit Authority, 10 F.3d 501, 516 (7th Cir.1993); Scaggs v. Consol. Rail Corp., 6 F.3d 1290, 1293 (7th Cir. 1993); Allison v. Ticor Title Ins. Co., 979 F.2d 1187, 1196 (7th Cir.1992). The court must "view damages evidence in the light most favorable to the verdict," Roggow v. Mineral Processing Corp., Needmore Processing Div., 894 F.2d 246, 249 (7th Cir.1990) (citations omitted), and "let the verdict stand unless there [is] no rational connection between the evidence on damage and the verdict." Lippo v. Mobil Oil Corp., 776 F.2d 706, 716 (7th Cir.1985) (citation omitted); see also Scaggs, 6 F.3d at 1293.
Mr. Love contends, assuming the court correctly instructed the jury as to damages, that the jury's verdict was against the clear weight of the evidence proving that any discrimination was intentional. The court agrees. The jury found that WCC discriminated against Mr. Love, and the record is absolutely devoid of any evidence that would support a finding that discrimination was not intentional. The court instructed the jury that "[a]n act is done intentionally if it is done knowingly, that is if it is done voluntarily and deliberately and not because of mistake, accident, negligence, or another innocent reason." Jury Ins. No. 15(b).[1] No evidence was presented at trial, either by WCC or Mr. Love, that would tend to show that if discrimination existed (as the jury found), it was caused by mistake, accident, negligence, or another innocent reason.
The clear weight of the evidence  indeed, the uncontradicted evidence  supports a finding that if there was discrimination, it was intentional. Mr. Love testified, without contradiction, that since at least May 1, 1992, he requested several times that he have access *810 to programs and services such as education, a group substance abuse program, the transition program, commissary, outside recreation, and a prison job. Gary Kendrick and James Yager corroborated Mr. Love's testimony of repeated requests for access to education and the law library. Larry Noland testified that in May 1993, Mr. Love was struggling with his counselor Haley about getting an education and his G.E.D.
Documentary evidence supports the conclusion that the discrimination had to be intentional. Plaintiff's Exhibit No. 12 showed that Mr. Love requested access to school in August of 1990 and had requested access for six years. Plaintiff's Exhibit 40 showed that Mr. Love filed a complaint about his lack of access to commissary. Plaintiff's Exhibit 34 showed Mr. Love requested to be in a substance abuse program on May 12, 1992. Plaintiff's Exhibit 9 showed that Mr. Love requested a transfer to transition unit approximately two months before his release date.
Both Vernon Brown, Assistant Superintendent of Programs at WCC, and Danny McBride, Superintendent of WCC, testified that they were aware of the complaint in a class action of which Mr. Love was a named plaintiff and demanded access to at least eight programs or services. Mr. Brown admitted in a deposition taken in that class action that he was aware that Mr. Love sought access to school to obtain his G.E.D. Mr. Love presented documentary evidence, see Plaintiff's Exhibit 18, that on March 11, 1993, Lyle Hatton, ADA Coordinator at WCC advised that Mr. Love and others were "excluded from some programs and services simply because of where they are housed and housing based only on their limitations." Mr. Love presented documentary evidence, see Plaintiff's Exhibits 19, 20-24, that Ron Black, Complex Director for the Industrial Complex, and Vern Brown, and Lyle Hatton were aware that changes were necessary to meet the requirements of the ADA. Mr. Brown testified that Mr. Love asked for substance abuse counseling in May 1993. Plaintiff's Exhibit 41, admitted into evidence, reveals that on July 14, 1993, Lyle Hatton responded to five grievances Mr. Love filed regarding access to outdoor recreation, law library, G.E.D. classes, job assignment, and religious services.
WCC presented no evidence at trial tending to show that it did not intend to discriminate against Mr. Love. The great weight of the evidence shows that WCC knew that it was not providing Mr. Love full access to services, programs, and activities, knew that Mr. Love's disability was the reason he was not receiving full access to those programs, knew that Mr. Love repeatedly requested access, knew that WCC had a legal duty to provide Mr. Love with reasonable access, and knew that Mr. Love had a right to reasonable access.
WCC may not have known that the access they were affording Mr. Love was unreasonable, but the jury was not asked to find a willful violation of the ADA. WCC voluntarily and deliberately denied Mr. Love's requests for greater access to the programs, and did so because of this known disability, not because of mistake, accident, negligence, or another innocent reason. Mr. Love was not required to prove anything more to establish that the discrimination (a separate issue) was intentional.
WCC contends, relying on Hedberg v. Indiana Bell Telephone Co., 47 F.3d 928 (7th Cir.1995), that intentional acts that are discriminatory are not necessarily proof of discriminatory intent. Indiana Bell had presented affidavits that it did not know of Hedberg's disability when it discharged him. Hedberg, 47 F.3d at 931. The court held that an employer cannot be held liable under the ADA for discharging an employee when the employer had no knowledge of the employee's disability. Hedberg, 47 F.3d at 932. The court reasoned that an employer that does not know of the employee's disability, cannot discharge the employee "because of" his disability, and so must have discharged the employee for some other reason. Hedberg, 47 F.3d at 932.
Hedberg is easily distinguishable. WCC does not, and cannot, contend that it did not know of Mr. Love's disability. The evidence clearly shows that at all times WCC knew of Mr. Love's disability; indeed. WCC contends that it placed Mr. Love on A2 South, *811 causing him to have restricted access to programs and services, "because of" his disability. WCC's own argument in opposition to Mr. Love's motion proves that WCC acted voluntarily and deliberately in denying Mr. Love access to programs and services. WCC argues that it restricted Mr. Love's access because of his need of constant medical attention. WCC's Response at 5-6. Thus, the clear weight of the evidence shows that WCC's discrimination was intentional. The jury could not reasonably have found otherwise. Upon finding that WCC discriminated against Mr. Love, no reasonable jury could find that the discrimination was other than intentional.
WCC's contention that it did not violate Mr. Love's rights under the ADA is unavailing. Mr. Love seeks a new trial on the issue of damages, and only alternatively seeks a new trial on liability and damages. The court, in its discretion, finds that Mr. Love should be granted the primary relief he seeks: a new trial solely as to damages. The jury found that WCC discriminated against him and the only reasonable finding is that the discrimination was intentional. Therefore, Mr. Love is entitled to have a jury finding as to his damages, if any, for any emotional or mental harm that Mr. Love may have suffered, including embarrassment, humiliation, mental anguish, fear, or the loss of participation in, services, benefits, or programs offered by Westville Correctional Center.
WCC contends that there is no rational connection between the evidence on Mr. Love's damages and the jury's verdict awarding Mr. Love $1,000.00 in pecuniary damages. The court agrees. The record contains no evidence that Mr. Love suffered any pecuniary damages. Even Mr. Love's counsel conceded during closing argument that he suffered no pecuniary damages:
What did he lose? You can't really say he lost pay because he probably didn't. He wasn't employed. If he was employed maybe he would get more. Maybe he wouldn't. What he lost is up here. It is that intangible that is so hard to comprehend.
Tr. at 22-23. Mr. Love's counsel added during rebuttal argument:
There was a discussion of he didn't lose anything because he didn't get a job. No, he didn't lose sixty-five cents a day. What he lost was self-respect. He lost the chance to get out and feel good about himself, say I'm doing a job. He was told he wasn't good enough to do a job because he was a quadriplegic. That is what he lost. He didn't lose ten cents a day. He lost that ability to feel useful.
Tr. at 40. Because there is no evidence in the record that Mr. Love suffered any pecuniary damages because of WCC's discrimination, there is no rational connection between the evidence on damages and the jury's verdict awarding Mr. Love $1,000.00 in pecuniary damages. Thus, the jury's award of pecuniary damages cannot stand. See Lippo, 776 F.2d at 716; Scaggs, 6 F.3d at 1293.
Accordingly, Mr. Love's motion for new trial on damages should be granted as to damages for emotional or mental harm that Mr. Love may have suffered, including embarrassment, humiliation, mental anguish, fear, or the loss of participation in, services, benefits, or programs offered by Westville Correctional Center. The jury's $1,000.00 pecuniary damages award must be vacated.
For the foregoing reasons, the court:
(1) GRANTS Mr. Love's motion for new trial on the issue of damages (filed April 21, 1995 (# 48-1)), ORDERING that Mr. Love shall have a new trial as to his damages of emotional or mental harm, including embarrassment, humiliation, mental anguish, fear, or the loss of participation in, services, benefits, or programs offered by Westville Correctional Center, if any;
(2) VACATES the clerk's judgment (entered April 14, 1995 (# 47)), RE-OPENING this cause;
(3) SETS this cause for purposes of trial setting for a telephonic status conference on June 29, 1995 at 9:00 a.m. (E.S.T.), with the court to establish the call;
(4) DENIES AS MOOT Mr. Love's motion for extension of time to file attorney's fee petition (filed April 21, 1995 (# 48-2)). Because the judgment has been vacated, *812 the time for seeking attorney fees has not yet come.
SO ORDERED.
NOTES
[1] WCC tendered this part of Instruction No. 15 before trial.