Cleo LOVE, Plaintiff–Appellee,

v.

WESTVILLE CORRECTIONAL
CENTER, Defendant–
Appellant.

No. 95–3679.

United States Court of Appeals,
Seventh Circuit.

Argued May 24, 1996.

Decided Dec. 26, 1996.

John Emry (argued), Franklin, IN, for plaintiff–appellee.

David A. Arthur (argued), Office of the Attorney General, Indianapolis, IN, for defendant–appellant.

Before POSNER, Chief Judge, and ROVNER and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

The Westville Correctional Center (Westville) claims in this appeal that the district court abused its discretion by granting Cleo Love's motion for a new trial and in giving certain instructions to the second jury that resulted in a verdict for Love in the amount of $30,948. Interwoven in the case are questions about the applicability of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*, to the prison setting and issues about the relation between the requirement for "intentional" discrimination under that Act and the reasonableness of accommodations offered. Because Westville conceded at oral argument that it was not challenging the general applicability of the ADA to prisons in this case, however, we assume for purposes of this opinion that it does so apply. Bearing in mind the substantial discretion that a trial judge enjoys in ruling on a motion for new trial, and finding no reversible error otherwise, we affirm.

I

Cleo Love is a quadriplegic confined to a wheelchair. In 1984, he was convicted and sentenced to twenty years in Indiana state prison for a narcotics offense. Between May 1, 1992, and June 23, 1993, the time period involved in this case, Love was housed in Westville's infirmary unit. This meant, among other things, that he was unable to

use the prison's recreational facilities, its dining hall, the visitation facilities that were open to the general inmate population, and that he was unable to participate in substance abuse, education, church, work, or transition programs available to members of the general inmate population. In addition, his access to the law library, the regular library, and the commissary was limited.

In May 1994, one month before his release, Love filed a complaint against Westville alleging violations of the ADA, claiming that he was being deprived of access to programs based on his disability. See ADA, 42 U.S.C. § 12132. After a two-and-a-half day trial in April 1995, the jury returned a verdict that Westville had violated Love's rights under the ADA, that the violation was not "intentional," and that Love was entitled to $1,000 in damages. The court entered judgment on that verdict on April 14, 1995. Love then properly filed a motion under Fed.R.Civ.P. 59(a), in which he asked for a new trial limited to the issue of damages or, in the alternative, for a new trial on both liability and damages. He argued that the jury's verdict on damages was against the clear weight of the evidence, and the court agreed. In the district court's words, "[t]he jury found that WCC discriminated against Mr. Love, and the record is absolutely devoid of any evidence that would support a finding that discrimination was not intentional.... No evidence was presented at trial, either by WCC or Mr. Love, that would tend to show that if discrimination existed (as the jury found), it was caused by mistake, accident, negligence, or another innocent reason." *Love v. McBride*, 896 F.Supp. 808, 809 (N.D.Ind.1995). Later in its order, the district court explained further that "WCC may not have known that the access they were affording Mr. Love was unreasonable, but the jury was not asked to find a willful violation of the ADA. WCC voluntarily and deliberately denied Mr. Love's requests for greater access to the programs, and did so because of this known disability, not because of mistake, accident, negligence, or another innocent reason." *Id.* at 810. In other words, the court drew a distinction between the intentional nature of the discrimination, and Westville's awareness of the reasonableness of the accommodations it was affording Love under the ADA. For this reason, the court granted Love's motion for new trial on the issue of damages:

The retrial on damages took place on October 2 and 3, 1995. In preliminary instructions, the court instructed the new jury (over Westville's objection) that "[i]n earlier proceedings in this case, it was determined that Westville Correctional Center intentionally violated Mr. Love's rights...." At the end of that trial, the court instructed the jury that "[i]t has already been determined, and you must accept, that Westville Correctional Center violated Mr. Love's rights under the Americans [w]ith Disabilities Act, and that the discrimination was intentional." Again, Westville objected. The second jury returned its verdict for $30,948 in damages, and the court later awarded Love's counsel $39,536.75 in attorneys' fees in an order not before us today.

## II

As noted earlier, Westville conceded at oral argument that the ADA applies to prisoner access to the kinds of programs at issue here. As was the case in *Bryant v. Madigan*, 84 F.3d 246, 248 (7th Cir.1996), we therefore need not decide in this case to what extent the ADA applies to correctional facilities. Love's case is in any event somewhat different from the claim in *Bryant*, since he presents a textbook example of a traditional ADA claim based on the denial of access to services, programs, and activities, based on his physical disability. We note that the Eighth and Ninth Circuits have applied the closely analogous Rehabilitation Act to state prisons. See *Lue v. Moore*, 43 F.3d 1203, 1205 (8th Cir.1994); *Gates v. Rowland*, 39 F.3d 1439, 1446 (9th Cir.1994). The Ninth Circuit notes, however, that the requirements under the Act would be affected by the "reasonable requirements of effective prison administration." *Gates*, 39 F.3d at 1446. On the other hand, the Fourth Circuit has expressed doubts about the ADA's coverage of state correctional facilities. See *Torcasio v. Murray*, 57 F.3d 1340, 1343–46 (4th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 772, 133 L.Ed.2d 724 (1996). Given this

difference of opinion, if not strictly of holding, we think it best to wait until the matter is fully briefed in a proper adversary setting before ruling definitively on it.

Westville acknowledges that it is difficult at best to demonstrate that a district court abused its discretion in ordering a new trial. See, *e.g., Emmel v. Coca–Cola Bottling Co. of Chicago,* 95 F.3d 627, 636 (7th Cir.1996); *United States v. Williams,* 81 F.3d 1434, 1437 (7th Cir.1996); *United States v. Boyd,* 55 F.3d 239, 242 (7th Cir.1995). In order to overcome this hurdle, it focuses on the district court's finding in its order granting the new trial on damages that Westville "may not have known that the access they were affording Mr. Love was unreasonable," and it claims that this is fundamentally inconsistent with the court's finding, as a matter of law, that the discrimination against Love was "intentional." This means, in Westville's view, that the court abused its discretion in granting a new trial limited to damages, and in instructing the second jury that it was required to accept the fact that Westville intentionally discriminated against Love.

In order to show a violation of the ADA, the plaintiff must prove that he is a "qualified individual with a disability," that he was denied "the benefits of the services, programs, or activities of a public entity" or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was "by reason of" his disability. See 42 U.S.C. § 12132. Proving the first element of the case requires, in turn, that the plaintiff show that he "meets the essential eligibility requirements" for participating in the program, with or without reasonable accommodations. See *id.,* § 12131(2). There is no dispute here that Love had a disability. It is also clear that Love was denied all access to some programs and activities, and his access to others was severely limited. For example, Sunday church services were not available in Love's unit, A2–South, but such services were offered in the main quarters of the prison. Love was denied access to a group substance abuse program because none was available for A2–South, even though the program was available in the main quarters, Love's counselor had recommended he attend it, and he had asked to participate. College classes were also only available in the main quarters, not in A2–South. Love offers a host of other examples, but these suffice to show that he was denied access to a variety of programs available at Westville.

The key question is whether he was able to participate in the programs and activities in question, given his disability, with or without reasonable accommodations from the prison. At the first trial, Love presented evidence to show that he could, with minimal accommodations that were not offered by Westville. Importantly, Westville did not defend on the ground that no reasonable accommodations existed that would have allowed him access to those programs. The prison officials admitted that they knew that Love had requested access to activities like the educational programs, the transition program (designed to ease the adjustment from the prison environment to post-release life), outside recreation, the general and law libraries, the commissary, and work programs. Their reason for denying access was based solely on the fact that he was a quadriplegic housed in the infirmary unit. In the face of Westville's total failure to present evidence that would have refuted Love's claim that he was a "qualified individual with a disability," no issue properly arose about the reasonableness of any accommodations it may have been prepared to offer. It is too late now for Westville to argue that it did not need to provide Love access to the programs because of his alleged failure to meet that criterion. The record at the first trial amply supports the trial judge's conclusion on the motion for new trial that Westville indeed committed "intentional" discrimination against Love. Its specific knowledge of the ADA's reasonable accommodation requirement is legally irrelevant to this finding.

We would be faced with a different, and potentially more difficult question, if Westville had introduced evidence showing the types of reasonable accommodations it was willing to provide that would have made it possible for him to participate in these programs. Such a showing would have been relevant to the first part of Love's burden under the ADA, because there is no right to

have access to programs unless one is "qualified" with or without reasonable accommodation, and it appears that Love would not have been able to participate without some accommodation. Cf. *Knapp v. Northwestern Univ.*, 101 F.3d 473, 481–86 (7th Cir.1996). The burden of proof is on the plaintiff to show he is a qualified individual with a disability, and this, in turn, is a necessary part of a finding of "intentional discrimination" under the statute.

Westville concludes with two more arguments: first, it claims that Love actually was given access to programs where this could be done without unreasonable modifications, and second, it argues that it did the best it could in light of its scarce resources. The problem with the first of these arguments is its inconsistency with the first jury's verdict. That jury found unambiguously that Love had been denied access to programs and services. The first jury also found that Westville's actions were not "intentional," but the district court set aside this finding as against the great weight of the evidence. Its decisions about program access (either in favor or against) were made intentionally, and they were clearly based on Love's physical disability. Nowhere does Westville argue that some other reason motivated its actions, such as the need to confine Love for disciplinary reasons, or for fear that other inmates would be infected, or because Love was otherwise unqualified to participate. As the district court correctly found, this satisfies the ADA's requirements for finding a violation of the statute. See, *e.g., Pandazides v. Virginia Bd. of Education*, 13 F.3d 823, 830 n. 9 (4th Cir.1994) (explaining, in the context of Rehabilitation Act employment discrimination, the distinction between intentional discrimination, which is all that is required for compensatory damages, and malicious discrimination, which is required for punitive damages).

The scarce resources argument suffers from a different problem. If Westville means that reasonable accommodations existed, but it did not want to spend the money to implement them, this argument is inconsistent with the premise of the ADA. If it meant that, taking the prison context into account, no *reasonable* accommodations were possible, that would be another matter. It is entirely possible that in the prison setting, assuming the ADA applies, the type of accommodation that will be enough to satisfy the statute's reasonableness requirement must be judged in light of the overall institutional requirements. Cf. *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Security concerns, safety concerns, and administrative exigencies would all be important considerations to take into account. On this record, however, given Westville's failure. to present direct evidence at the trial supporting this explanation for its treatment of Love, there is nothing to refute Love's showing that he was qualified—and his implicit showing that the accommodations required were reasonably within the institution's capability.

Westville offers no other reasons why the district court should have refused Love's request for a new trial on damages. We conclude that the court did not abuse its discretion here, and we accordingly AFFIRM its judgment.