In the

# United States Court of Appeals
### For the Seventh Circuit

———————————

No. 13-3839

RICHARD WAGONER,

*Plaintiff-Appellant,*

*v.*

BRUCE LEMMON, Commissioner of the Indiana Department of
Corrections, and INDIANA DEPARTMENT OF CORRECTIONS,

*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:05-cv-438 — **Christopher A. Nuechterlein**, *Magistrate Judge.*

———————————

ARGUED SEPTEMBER 18, 2014 — DECIDED FEBRUARY 4, 2015

———————————

Before Wood, *Chief Judge*, and Posner, and Manion, *Circuit Judges*.

WOOD, *Chief Judge*. This appeal requires us to revisit the
rule imposed by the Prison Litigation Reform Act (PLRA)
requiring a prisoner to exhaust any available administrative
remedies before challenging her conditions of confinement
in a federal court. See 42 U.S.C. § 1997e(a). Often exhaustion
(or its lack) will be apparent, but when it is not, the district

court must hold an evidentiary hearing to resolve the question. See *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). A *Pavey* hearing serves a limited but important role: it helps the judge decide whether the court or the prison is the proper forum for the prisoner's grievance. A proper *Pavey* hearing should be conducted *before* an adjudication on the merits. In the present case, that did not happen, because the prisoner failed to submit his renewed motion for a *Pavey* hearing as directed by the district court. We must decide whether the court abused its discretion in denying that hearing and whether the Commissioner and the Indiana Department of Corrections were entitled to summary judgment.

## I

For twelve years, Richard Wagoner was incarcerated in various facilities overseen by the Indiana Department of Corrections (IDOC). Wagoner is paraplegic, as a result of severe injuries he sustained in a car accident in 1996, and thus he needs a wheelchair. In 2005, five years into his confinement, Wagoner filed a *pro se* complaint in which he asserted that IDOC had failed properly to accommodate his disability and had thus violated his civil and constitutional rights. The district court eventually recruited counsel for Wagoner, and counsel submitted the operative third amended complaint on September 6, 2011. That complaint alleged that IDOC and its Commissioner (in his official capacity) had committed various violations of the Eighth and Fourteenth Amendments of the U.S. Constitution, redressable under 42 U.S.C. § 1983, and had violated Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 *et seq.*, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, as well. The complaint identified eight particular grievances, including 1) in-

adequate and humiliating toileting arrangements; 2) a cell so small that Wagoner had to move his wheelchair every time his cellmate needed to use the toilet; 3) sidewalks that caused him to tip out of his wheelchair and fall to the ground; 4) no access to the weight room or the library because of space constraints; 5) ongoing problems with his wheelchair and its repair; 6) failures to provide him with other medical supplies; 7) exclusion from a job training program; and 8) transportation in a vehicle not equipped for wheelchairs—a shortcoming that led once to Wagoner's catheter becoming dislodged and that forced him to crawl on the van's floor in order to get out of the vehicle.

IDOC, acting for itself and the Commissioner, filed a motion for summary judgment. IDOC argued it was entitled to judgment as a matter of law for several reasons, including that Wagoner had failed to exhaust his administrative remedies as required by the PLRA. On April 18, 2013, Wagoner filed a motion for a *Pavey* hearing to determine whether he had, in fact, exhausted his administrative remedies. On May 20, 2013, the court denied that motion without prejudice, with this explanation:

> The Court acknowledges Plaintiff's apparent interest in clarifying the proper timing of a *Pavey* hearing presumably to ensure that the opportunity is not lost by litigating the pending motion for summary judgment. However, Plaintiff has not yet established that a dispute of fact as to whether Plaintiff exhausted his administrative remedies before filing this action exists. Therefore, the Court has no reason to schedule a *Pavey* hearing. Plaintiff may use his response to Defendants' motion for summary judgment to create

such a record. If he does, the Court will schedule a
*Pavey* hearing should exhaustion remain an issue after
the Court's full consideration of the pending motion
for summary judgment.

Rather than follow the court's order to combine his brief
in opposition to summary judgment with facts supporting
the need for a *Pavey* hearing, Wagoner filed a brief in opposi-
tion to IDOC's motion for summary judgment on June 14,
2013. Over a month later, he filed a separate motion request-
ing a *Pavey* hearing. This second *Pavey* motion, though simi-
lar to the first, filled in the evidentiary blanks that had exist-
ed. It included a lengthy excerpt of Wagoner's deposition in
which he recounted with more particularity IDOC's threats
when he filed grievances and support for his contention that
futility excused any failure to exhaust that existed.

On November 26, 2013, the district court granted IDOC's
motion for summary judgment. The magistrate judge, acting
with the consent of the parties pursuant to 28 U.S.C. § 636(c),
refused to consider Wagoner's second *Pavey* motion "or any
of the accompanying exhibits as part of its exhaustion analy-
sis." Without those materials, the court concluded that Wag-
oner was not entitled to a *Pavey* hearing. It found that Wag-
oner had properly exhausted only two grievances (one con-
cerning repair of his wheelchair and the other the improper
transportation to a medical appointment). As to the remain-
ing claims, the district court concluded that IDOC and the
Commissioner were entitled to judgment as a matter of law:
neither IDOC nor the Commissioner was a proper party un-
der Section 1983, Wagoner had not been denied access with-
in the meaning of the Rehabilitation Act or the ADA, and
qualified immunity protects the Commissioner from indi-

vidual liability under the Rehabilitation Act. (It is not clear why the court included the last of those points: these were official-capacity claims, and the doctrine of qualified immunity applies to individual persons, not to state agencies or official-capacity suits. See, *e.g.*, *Hafer v. Melo,* 502 U.S. 21, 25 (1991).)

Wagoner appeals on two grounds. He argues that the district court committed reversible error when it denied his second request for a *Pavey* hearing. Wagoner also asserts that the district court erred in granting summary judgment in favor of IDOC and its Commissioner.

## II

We begin with the district court's handling of Wagoner's requests for a *Pavey* hearing. A word about the standard of review is in order, since the parties have different views on the matter. Wagoner asks us to review the denial of a *Pavey* hearing *de novo* because it is a legal interpretation of the PLRA and not a factual finding. IDOC suggests that the more appropriate standard is abuse of discretion, since the district court had to exercise some judgment in coming to its conclusion. In a sense, they are both correct. We review the threshold question whether a *Pavey* hearing is required at all *de novo*, as it is ultimately an interpretation of the federal statute. To the extent we are considering trial management, however, the standard is abuse of discretion.

Since the passage of the PLRA, exhaustion of remedies is not optional for a prisoner in cases to which it applies. See 42 U.S.C. § 1997e(a). As the Supreme Court noted, "A centerpiece of the PLRA's effort to reduce the quantity ... of prisoner suits is an invigorated exhaustion provision." *Woodford*

*v. Ngo*, 548 U.S. 81, 84 (2006) (citations and quotation marks omitted). In *Pavey*, we attempted to flesh out the practical application of this rule. We held that a prisoner is not entitled to a jury trial on contested issues regarding his failure to exhaust; instead, a hearing before the district court suffices to resolve any such questions. We then outlined the procedure that the court should follow:

> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the

findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Pavey*, 544 F.3d at 742.

Wagoner contends that the district court improperly denied his request to conduct the hearing prescribed in Step #1 of *Pavey*. For support, he cites to two pre-*Pavey*, but post-PLRA, cases. In *Lewis v. Washington*, this court remanded a PLRA case to the district court to consider whether administrative remedies for a particular grievance were available given the prison official's failure to respond. 300 F.3d 829, 835 (7th Cir. 2002). Wagoner's case is different, however, because the court did consider, grievance by grievance, whether he had exhausted.

In *Dale v. Lappin*, the other case Wagoner cites for support, we admonished the district judge for failing to address any of the prisoner's exhaustion evidence and instead "merely describ[ing] his allegations as 'bald assertions'" even though the prisoner had specifically identified instances where prison employees had denied him the grievance forms he requested. 376 F.3d 652, 655–56 (7th Cir. 2004) (citing *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) ("[A] remedy that prison officials prevent a prisoner from 'utiliz[ing]' is not an 'available' remedy under § 1997e(a).")). Most of Wagoner's assertions about his attempts to pursue his administrative remedies involve either being unable to get into the office to voice his complaint because of the steps or verbal comments from IDOC officials.

But Wagoner's biggest problem stems from his failure to follow the court's order to include his renewed *Pavey* motion

(and supporting evidence) in his brief in opposition to IDOC's motion for summary judgment. Instead, contrary to the court's instructions, he bifurcated the two submissions and waited a month after submitting his brief in opposition to summary judgment to file his second *Pavey* motion.

Wagoner says that he followed this procedure in order to avoid confusion on the issues. But it was not up to him to override the court's considered choice. It is true that the court's role is different for the two matters, but we have no reason to think that the magistrate judge was unaware of this fact. The judge, not the litigants, is responsible for directing pretrial traffic, and a party does not get to pick which court orders to follow. The magistrate judge had granted Wagoner's motions for extensions of time to file the proper briefs. The judge did not abuse his discretion in refusing to consider those materials, because Wagoner did not comply with the order on when and how to submit them.

All of that said, as a matter of best practices we do not endorse the combining of a *Pavey* motion with a summary judgment response. The purpose of a *Pavey* hearing is to resolve disputed factual questions that bear on exhaustion, including what steps were taken and whether the futility exception might apply. Wagoner's case was far from open-and-shut. The fact that he was able to exhaust two of his claims offers a reason to reject his claim that he was prevented from exhausting his other six. On the other hand, IDOC took *five years* to get Wagoner a new wheelchair. That strikes us as an extraordinarily long time, and it raises a legitimate question of futility. An evidentiary hearing could have clarified these matters, and we know from Wagoner's untimely submission that there was more he might have proffered.

To be clear, we do not regard the court's initial ruling as the only one that would have been supportable. Just as the court did not abuse its discretion in requiring more evidence before moving to the hearing, it would not have abused its discretion by holding a *Pavey* hearing based on Wagoner's first motion. *Cf. Roberts v. Neal*, 745 F.3d 232, 236 (7th Cir. 2014) (holding that it was improper for the court to grant summary judgment for prison officials without conducting a *Pavey* hearing); see also *Swisher v. Porter Ctny. Sheriff's Dep't*, 769 F.3d 553 (7th Cir. 2014). The logic of *Pavey* is in some tension with a decision to combine the resolution of facts pertinent to exhaustion with the decision whether there are facts warranting a trial. *Pavey*'s central holding is that exhaustion is not a question for the jury at trial, but instead is a preliminary issue for the court. Summary judgment, in contrast, is designed to weed out cases that must to go to a trier of fact from those that present no such issues. Separation of the exhaustion inquiry from summary judgment will thus promote clear decisionmaking.

## III

We now turn to the question whether summary judgment in favor of IDOC and the Commissioner was correctly granted. We review that part of the court's order under the familiar standard under which we look at the record in the light most favorable to the non-moving party, *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008), and uphold the judgment only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. We address in order Wagoner's claims based on Section 1983, Title II of the ADA, and Section 504 of the Rehabilitation Act.

*Section 1983*—The district court properly dismissed Wagoner's Section 1983 claims for violations of his Eighth and Fourteenth Amendment rights. IDOC and the Commissioner in his official capacity are not "persons" within the meaning of the statute. See *Dobbey v. Ill. Dep't of Corr.*, 574 F.3d 443, 444 (7th Cir. 2009) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). And as we have noted, Wagoner did not raise any claim against the Commissioner in his individual capacity. Even if he had, it would have gone nowhere, because individual-capacity claims cannot rest on a *respondeat superior* theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

*Title II of the ADA and the Rehabilitation Act*—The district court also properly dismissed Wagoner's ADA and Rehabilitation Act claims. To establish a violation of Title II of the ADA, "the plaintiff must prove that he is a 'qualified individual with a disability,' that he was denied 'the benefits of the services, programs, or activities of a public entity' or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was 'by reason of' his disability." *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996) (citing 42 U.S.C. § 12132). The Rehabilitation Act claim is functionally identical: it requires the plaintiff to allege that "(1) he is a qualified person (2) with a disability and (3) the [state agency] denied him access to a program or activity because of his disability." *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012). For the Rehabilitation Act to apply, the relevant state agency (here the corrections department) must accept federal funds, which all states do. *Id.* at 671 ("[T]he analysis governing each statute is the same except that the Rehabilitation Act includes as an additional element the receipt of federal funds, which all states accept for their prisons") (citations omitted). Wagoner's paraplegia qualifies

as a disability. The only question is whether IDOC denied him access to any program or service.

Had Wagoner exhausted his administrative remedies for some of his complaints, such as his exclusion from the Department of Labor program and the law library, he might have been entitled to pursue his theories under the ADA or the Rehabilitation Act. As matters stand, however, all but two of his claims are procedurally barred. The two that survive are the grievance about the condition of his wheelchair and its repair and IDOC's improper transportation of Wagoner in that ill-equipped van. But these claims are a poor fit for the statutes Wagoner has invoked. He does not allege, for example, that the failure to provide him with an adequate wheelchair backrest or a wheelchair-ready van (however inappropriate those failings might otherwise have been) denied him access to any services or programs.

Wagoner's strongest argument is that by failing to repair his wheelchair, IDOC impeded his access to facilities available to non-disabled prisoners. But Wagoner has not asserted as did the prisoner in *Love v. Westville Correctional Center*, that he was "denied all access to some programs and activities, and his access to others was severely limited." 103 F.3d at 560. Wagoner says only that he was inconvenienced with longer waits and humiliation, as when he had to crawl off the regular van because it did not accommodate his wheelchair. These disconcerting allegations do not amount to a denial of services within the meaning of either statute. Wagoner could have claimed that the wheelchair itself is a service under either act, because it is necessary to accommodate his paraplegia, but IDOC provided Wagoner with a new wheelchair before he filed his grievance about the backrest.

**IV**

In closing, we stress that it is better practice to hold a *Pavey* hearing separate from and before considering a motion for summary judgment. Nonetheless, although the judge did not do so here, we find no reversible error. In addition, the court correctly concluded that no material facts were disputed and that the Commissioner and IDOC were entitled to judgment as a matter of law. We therefore AFFIRM the judgment of the district court.