NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 22, 2018[*]
Decided July 26, 2018

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 17-1586

| | |
|---|---|
| TARENCE BANKS, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Eastern District of Wisconsin. |
| *v.* | No. 14-cv-381-PP |
| LESLIE PATTON, et al., | Pamela Pepper, |
| *Defendants-Appellees*. | *Judge.* |

**O R D E R**

Tarence Banks sued jail officials for alleged violations of the Rehabilitation Act and the Americans with Disabilities Act, among other things, during his stay as a pretrial detainee at the Racine County Jail. The district court entered summary judgment for the defendants on several claims because Banks had failed to exhaust his administrative remedies. The court decided the remaining claims on the merits. We affirm the merits decision but vacate and remand for further consideration of administrative exhaustion.

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

## Background

Banks arrived at the Racine County Jail in November 2013. An injury that Banks had incurred the month before led to the amputation of his left arm. He had large incisions down his arm, legs, and back from a bone graft performed in an attempt to save his injured arm. He also came to jail with an infection. When he arrived, Banks told jail staff that he would need a handicapped-accessible cell.

The intake cell, where Banks spent his first five days, was not handicapped-accessible; in particular, there were neither grab bars on the walls nor rails on the bed. Banks struggled to use the bed or toilet without difficulty. He sometimes urinated on himself because he could not make it from the bed to the toilet in time. After Banks was moved to a medical-segregation cell, where he stayed for two months, he depended on his cellmate to help him get out of bed, onto the toilet, and to tend to his hygiene—as before, there were no accessibility features in the cell.

Banks asked to be transferred from medical segregation into the general population, saying he was "good to go." The jail moved Banks to a maximum-security pod within the general population in January 2014. This cell was not handicapped-accessible either; no cells for inmates with Banks's security classification have grab rails due to safety and security concerns, including the risk of suicide.

Banks's medical woes did not prevent him from getting into trouble. During his confinement, he received several disciplinary actions for his behavior. For example, Banks exposed himself multiple times to nurses and violated jail rules like using obscene language with a corrections officer, refusing orders, threatening a corrections officer, and engaging in play fighting. He spent 25 days in February 2014 in disciplinary segregation, again in a cell that was not tailored for an individual with disabilities.

Banks filed many grievances during his stay at the jail about not being in a handicapped-accessible cell. He no longer had the help of his previous cellmate and he was still having problems with his arm and leg. He submitted a grievance asking for a wheelchair, but it was not deemed a medical necessity. Yet despite the absence of hand rails, Banks did not complain of problems with his bed or toilet once he was moved to the general population, and his mobility problems improved. His requests to move then focused on being closer to the handicapped shower in the intake area, to which he received access every three days. Banks also filed many grievances about inadequate

medical care for his postsurgical wounds and his pain, and he repeatedly requested a prosthetic arm.

The jail handbook explains that if informal resolution of a problem is not possible, then an inmate may submit a written grievance on the inmate request form. Inmates are told not to submit multiple requests for the same concern and that "it may take several days for a formal written response." Grievance appeals must be submitted "in writing within 15 days to the jail administrator using the inmate request form."

Banks sued several of the jail's corrections officers and medical providers in April 2014. He claimed a bevy of constitutional violations including failure to accommodate his disability in violation of Section 504 of the Rehabilitation Act and Title II of the ADA. The jail employees and the medical providers each moved for summary judgment. In their respective motions, each asserted that Banks did not exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). In particular, they contended that although Banks had filed over 60 grievances during the 5 months between the start of his incarceration (November 2013) and the date that he filed his federal complaint (April 2014), he never appealed any of the initial denials. The defendants also sought judgment on the merits.

Because both the jail employees and the medical providers had argued in their summary-judgment motions that Banks had failed to exhaust his administrative remedies, the district judge decided to hold an evidentiary hearing on the exhaustion issue, *see Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008), before deciding the motions. The judge recruited an attorney to represent Banks at the hearing only. The record does not contain a transcript—the hearing was transcribed, *see* 28 U.S.C. § 753(b), but neither party provided one to us. Although we have the option to direct the preparation of a transcript, we did not order one here to conserve resources; the district judge summarized the evidence in detail in the memorandum opinion granting the jail officials' motion for summary judgment. At the hearing, Banks testified that he had not appealed many of his grievances but explained that there were two reasons. First, he had not received responses to the majority of his grievances, and he could not appeal decisions that had never been provided to him. Second, he was unaware of the proper appeal process because the handbook pages explaining grievance procedures were in the dayroom where he was unable to access them. When he arrived, he could not get out of bed without assistance and was segregated for months. Moreover, the inmate request forms that he used contained no directions about how to appeal.

During the hearing the defendants pointed out that even if Banks could not see the handbook at first, he had been housed at the jail 45 times since 1997 and the handbook was posted on the dayroom wall each time. Moreover, Banks's mobility limitations resolved before he filed his federal complaint. The defendants also argued that Banks had filed multiple complaints on the same topic and that while the defendants may not have responded to every grievance, they responded to every topic. Only "legitimate" grievances get a response, they said although the handbook says all grievances get a written response within days. When the judge asked how a grievance could be distinguished from an appeal since they used the same form, the defendants responded that on the form the inmate should reference the decision he was appealing. The district court observed that this requirement was not in the jail handbook.

The district judge then analyzed the hearing evidence in her memorandum opinion. First, she limited the universe of grievances that she would consider. She noted that the jail's "informal and disorganized filing system" made it difficult to "track which complaints the RCJ staff responded to, which they ignored, and which, if any, the plaintiff appealed." She faulted the defendants for providing just a "sample" of the grievances and responses as evidence for their defense and for not performing "the tedious task of organizing all of the complaints by claim and showing whether, when, and how the RCJ [d]efendants responded." Therefore, she took Banks at his word that only Captain Wearing, the jail administrator, ever responded to any grievance, and that Banks received many responses only after filing suit. To resolve the exhaustion issue, therefore, she considered only responses that were signed by Captain Wearing and dated. Applying this protocol, the judge then dismissed a handful of Banks's claims without prejudice because Banks had failed to exhaust his administrative remedies.

The district judge addressed the rest of Banks's claims on the merits, including the failure to place him in a handicapped-accessible cell. She concluded that Banks's temporary need for a handicapped-accessible cell was attributable to injuries, not a disability, and further that there was no "reasonable accommodation" to be had for him while housed in the maximum-security pod. On appeal, Banks challenges only this aspect of the merits decision in addition to the findings that he failed to exhaust his claim of deliberate indifference to his serious medical needs.

**Analysis**

I.      Exhaustion of Administrative Remedies

Banks argues that dismissal for failure to exhaust his remedies with respect to his medical-care claims was in error. The jail defendants, he argues, prevented him from exhausting because they did not explain the appeal procedure to him, failed to produce or lost his grievances, and did not respond to his grievances.

Ordinarily we review the denial of a summary-judgment motion de novo. But, after a *Pavey* hearing, we review findings of fact for clear error and the district court's conclusions of law de novo. *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018). At the outset we note that because a dismissal without prejudice is not final, it is not ordinarily appealable. *Hill v. Snyder*, 817 F.3d 1037, 1039–40 (7th Cir. 2016). But Banks cannot further pursue administrative remedies for the actions surrounding his claims because he is now time-barred by the jail's grievance policy. *Id.* He cannot do anything to cure the alleged failure to exhaust now and thus the dismissal is final for purposes of appellate review. *Id.*

It was the defendants' burden to prove that Banks had not exhausted his administrative remedies. *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015). Although the district court acknowledged that much of the defendants' "sample" of evidence was unreliable, and limited the evidence as a result, she did not hold the defendants to their burden. Specifically, the judge drew an inference against Banks with respect to whether he ever appealed a grievance related to his medical care.

The medical providers did not present evidence at the *Pavey* hearing, but in their summary-judgment motion they explained that only two grievances related to the treatment of Banks's arm, filed on February 6 and 7, 2014. The district judge examined the evidence and concluded that Banks also had filed grievances about the treatment of his arm on December 12 and 16 of the previous year. The judge could find no response to the December grievances but waved off the jail's failure because Lieutenant Friend testified that "complaints about medical issues are generally forwarded to the medical staff." As to the February grievances, the judge said, "these complaints were directed at a different RCJ Defendant [i.e., Wearing] and they did not reference his prior complaints or the lack of response to those complaints." The judge agreed that Captain Wearing had responded, on February 12, to the earlier February grievances. Because the medical defendants asserted that Banks had never appealed Wearing's February 12

response and Banks "did not rebut this assertion with evidence," the judge concluded that Banks did not exhaust his administrative remedies before suing about his poor medical treatment.

But the judge's finding that the February grievances were not appealed is based on factual inferences not justified by the record, and so she committed clear error. First, the judge treated the grievances that received no response as unexhausted. To successfully exhaust "prisoners need not file multiple, successive grievances raising the same issue," as the court concluded that Banks did here. *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). Inmates must exhaust *available* administrative remedies, 42 U.S.C. § 1997e(a), and a remedy can be unavailable if jail officials do not respond to the grievance. *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016). Again, it is the defendants who bear the burden of proving that Banks failed to exhaust. *Id.* Banks filed two grievances in December and the defendants provided no evidence that they responded or forwarded them to the medical department (although it is unclear why that would obviate the need to respond, anyway). The jail officials' nonresponse should have established that Banks exhausted his administrative remedies.

Further, the district judge clearly erred in concluding that Banks did not appeal the February grievance denials. The judge's conclusion is supported by the record only if she inferred, against Banks, that they were original grievances and not appeals. True, in his February grievances, Banks did not reference the lack of response to his prior grievances. But the judge noted that the jail handbook does not contain that requirement, and neither the judge nor the defendants say how Banks could have learned of it. Although the judge did not credit Banks's testimony that he was unable to access the handbook, which she was entitled to do, the handbook did not contain the "rule" at issue so even seeing the handbook could not have changed Banks's actions. Jails "cannot shroud the prisoner in a veil of ignorance and then hide behind a failure to exhaust defense to avoid liability." *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016). The jail handbook says it may take several days to get a formal written response—days, not months. So the February grievances, restating the same issues as the ignored December grievances, could just as easily have been treated as appeals. The district judge made no findings about the exhaustion of his medical claims regarding the treatment of his other postsurgical wounds, infection, and rash, only the "sample" of grievances about his arm because that is all the defendants produced. Therefore the other medical claims remain an open question. Given the ambiguous rules, and the allocation of the burden of proof to the defendants, the judge committed clear error in

the fact-finding from which she drew the conclusion that Banks did not exhaust his remedies. Accordingly, we vacate the judgment for the medical defendants.

II.      Disability Discrimination

Banks next argues that he was denied the benefits of services and programs as required by the Americans with Disabilities Act and the Rehabilitation Act because he was housed in cells that did not comply with the structural requirements of the statutes. Naming the jail defendants in their official capacities allows him to pursue this claim against the jail. The relief under either statute is the same; the analysis is too, because the only additional element that the Rehabilitation Act includes is an institution's receipt of federal funds, something the jail officials admit. *See Jaros v. Ill. Dept. of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012). But we refer only to the Rehabilitation Act going forward in order to avoid a "thorny question of sovereign immunity" that persists with respect to the ADA. *Id.* at 672. In order to succeed under the Rehabilitation Act, Banks must show: "(1) he is a qualified person (2) with a disability and (3) the [jail] denied him access to a program or activity because of his disability." *Id.* "Refusing to make reasonable accommodations is tantamount to denying access." *Id.*; *see A.H. by Holzmueller v. Ill. High Sch. Ass'n*, 881 F.3d 587, 592 (7th Cir. 2018) (discussing extension of "reasonable accommodation" concept to Title II of ADA and Section 504 of Rehabilitation Act).

First, there is little question that Banks, an amputee, is an individual with a disability. *See* 42 U.S.C. § 12102(1). For purposes of this appeal, the defendants do not seem to dispute that conclusion, although they make the stray assertion that injuries and illnesses are not disabilities.

Second, we can assume that Banks claims the denial of access to a qualifying "program or activity." Incarceration itself is not a program or activity, but the meals and showers made available to inmates are, *Jaros*, 684 F.3d at 672, and the defendants agree that some courts also have found access to toilets a program or activity. Banks's chief complaint is not being placed in a handicapped-accessible cell; the attendant difficulties involved access to the toilet and the bed.

The reasonable accommodation that Banks allegedly was denied was a handicapped-accessible cell. Yet Banks wrongly argues that the jail had to move him to a handicapped-accessible cell in the low security E-wing. The jail had no obligation to change his security classification, as this would require a "fundamental alteration in the

nature of the program." *See Valencia v. City of Springfield*, 883 F.3d 959, 968 (7th Cir. 2018).[1] Banks has not demonstrated that he was unreasonably denied any other accommodation, either. Indeed, as the district court found, it is far from clear that Banks required any accommodation once he was "good to go," as he said, to the general population. He no longer complained about being unable to use the toilet or the bed; rather, he complained about having to travel to the intake area to shower. The record, therefore, does not establish the denial of a reasonable accommodation.

In any event, even if Banks still needed an accessible cell, we could not conclude that the jail withheld it "by reason of" Banks's disability, and not for a generally applicable reason. *See Wis. Cmty. Serv., Inc. v. City of Milwaukee*, 465 F.3d 737, 748 (7th Cir. 2006). The jail showed that grab bars and handrails present safety risks, including the risk of using them to commit suicide, (something to which the maximum-security population already is more susceptible). *See Crawford v. Ind. Dept. of Corr.*, 115 F.3d 481, 487 (7th Cir. 1997) (abrogated on other grounds); *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 561 (7th Cir. 1996). And despite his amputation, Banks continued to pose a disciplinary challenge throughout the relevant time period, elevating the security concerns. The cane that jail officials confiscated from Banks could function as a deadly weapon, and a doctor opined that Banks did not require a wheelchair, despite his request. Security concerns and medical opinions, specific to the offender, are neutral reasons for declining accommodations. Therefore, Banks fails to show that the denial of any accommodation was "by reason of" his disability.

Therefore, we AFFIRM the entry of summary judgment for the jail defendants on the disability-discrimination claim, but we VACATE the judgment of dismissal for the medical defendants based on failure to exhaust and REMAND to the district court for further proceedings consistent with this order.

---

[1] But the jail wrongly assumes that because the only handicapped-accessible cells are in the minimum-security dormitory, it has no duty to provide them to maximum-security inmates like Banks. It argues that placing an inmate in a cell with a toilet and bed is enough, even if the inmate cannot use either easily. That is a dubious proposition because *meaningful* access is required. *See Alexander v. Choate*, 469 U.S. 287, 301 (1985). The current absence of a handicapped-accessible cell in the maximum-security pod is not an excuse for refusing to provide one, or some reasonable alternative, if it is needed. *See Jaros*, 684 F.3d at 672.